IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA CLEMONS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 18-866 |
| | ) | |
| WASHINGTON TROTTING ASSOCIATION, | ) | Magistrate Judge Mitchell |
| LLC, d/b/a THE MEADOWS & CASINO and the | ) | |
| ESTATE OF JOHN R. DINGLE, JR., | ) | |
|     Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Defendant Washington Trotting Association, LLC, d/b/a The Meadows & Casino ("the Meadows") has filed a Motion to Dismiss Count III of Plaintiff's Complaint (ECF No. 6). For the reasons that follow, the motion will be denied.

Plaintiff, Tina Clemons, brings this action pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), 42 U.S.C. § 1983 and state law, alleging claims of sexual harassment, a sexually hostile work environment and related claims against her employer Defendant Washington Trotting Association, LLC, d/b/a The Meadows & Casino ("the Meadows") and the Estate of John R. Dingle, Jr. The Complaint arises out an incident on June 18, 2017 when, she alleges, Dingle sexually assaulted her during her overtime shift security officer at the Meadows.

The Meadows moves to dismiss Count III of the Complaint, which alleges a claim under the Pennsylvania Dram Shop Act. Plaintiff has filed a brief in opposition (ECF No. 15) and the Meadows has filed a reply brief (ECF No. 17) and the motion is now ripe for disposition. For the reasons that follow, the motion will be denied.

<u>Facts</u>

Plaintiff began her employment at the Meadows as a security guard on February 28,

2017. (Compl. ¶ 12.)[1] On June 17, 2017, her scheduled hours were from 4:00 p.m. until 12:00 a.m., but her supervisor asked her to stay overtime and she agreed to stay until 8:00 a.m. (Compl. ¶¶ 13-15.) Around 11:45 p.m., her supervisor told her that she was going to be driving the shuttle bus from 1:00 a.m. to 3:00 a.m. One of the guests she picked up was John Dingle, who was clearly intoxicated. He asked to be dropped off in the parking lot where his RV was parked and Plaintiff did so. (Compl. ¶¶ 16-27.)

Sometime later, she received a call to pick up someone from the RV parking lot who wanted to go to the casino. It turned out to be Dingle, who was so drunk that he left his RV door open and skipped a step getting on the shuttle. He told Plaintiff that he did not want to go to the casino but had made this request so that he could see her. He started kissing her all over her face, neck and throat area and told her he wanted her to go back to his RV and have sex with him. He had his hands on her arms such that she could not move, escape or defend herself. (Compl. ¶¶ 32-41.) She refused and told him to get off the shuttle. He grabbed her breast and attempted to reach for her crotch. He also tried to place her hand on his crotch and she quickly moved it away. He told her he would stop if she gave him her phone number and she wrote down an incorrect number. He finally got off the shuttle. (Compl. ¶¶ 43-66.)

Plaintiff drove to the South Garage and ran inside, requesting the female supervisor's name, and the North Strabane police were called and took a police report. She identified Dingle and a warrant was put out for his arrest. He turned himself in the following Monday. (Compl. ¶¶ 67-71.) Plaintiff indicates that she was told at first that Dingle would be permanently banned from the casino, but later learned that he would only be subjected to a thirty-day ban. (Compl. ¶¶ 72-73.)

---

[1] ECF No. 1.

Plaintiff alleges that she found out that Dingle was well known to the casino and that security was not going to do anything when he touched a female unless someone complained because he spent a lot of money there. Her supervisor knew immediately who it was and said that he always grabs girls and bartenders would complain about him, but he would just be transported back to his RV. (Compl. ¶¶ 74-78.) Dingle admitted the assault on camera to Marcy Cipriani of WTAE TV, but he was so drunk that he could not remember what happened. Dingle said he was sorry and that he had a lot of explaining to do to his wife and family. (Compl. ¶¶ 79-80.)

Dingle was charged with indecent assault and public drunkenness. However, he died on March 10, 2018. (Compl. ¶¶ 82-83.) Plaintiff alleges that the Meadows knew or should have known of his conduct and failed to take immediate and appropriate action, that it permitted him to patronize the casino despite knowing that he was a serial sexual harasser, that it was absolutely foreseeable and preventable that he would sexually assault or harass a female and that it was aware that he was extremely drunk but was served more alcohol anyway. (Compl. ¶¶ 84-87.)

Procedural History

Plaintiff filed this action on July 2, 2018. Federal question jurisdiction is premised upon the Title VII and § 1983 claims, 28 U.S.C. § 1331. Supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367. The first three claims are asserted against the Meadows for: sexual harassment (Count I), hostile work environment (Count II) and violations of the Dram Shop Act (Count III). The remaining claims are asserted against Dingle's estate for: assault (Count IV), battery (Count V) and intentional infliction of emotional distress ("IIED") (Count VI).

On September 7, 2018, the Meadows filed a motion to dismiss Count III (ECF No. 6). On October 23, 2018, Plaintiff filed a brief in opposition (ECF No. 15). On November 7, 2018, the Meadows filed a reply brief (ECF No. 17).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

4

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Meadows argues that Count III, alleging claims under the Dram Shop Act, is preempted by the Pennsylvania Workers' Compensation Act (PWCA) and that no exceptions apply. Plaintiff responds the Dram Shop Act is not the exclusive remedy for an injured party and that the PWCA exception for "personal animus" applies. Defendant replies that the Dram Shop Act's scope is irrelevant to this case and that Plaintiff's claim does not fit within the personal animus exception.

Determining State Law

The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996). The Court must predict how the Pennsylvania Supreme Court would rule if presented with this situation. This is an issue of law to be resolved by the court. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

The PWCA provides that:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

5

> (b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481. Further:

> (1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto… The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; …but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1) (footnote omitted).

The Meadows cites Hancuff v. Prism Techs. & Assemblies, LLC, 357 F. Supp. 2d 828 (W.D. Pa. 2005). In that case, employees brought claims including battery and IIED against their employer based on sexual assaults by another employee, Joseph Difucci, who then allegedly subjected them to harassing acts of exposing them to toxic fumes when his advances were rejected. The court held that Difucci's conduct appeared to be motivated by sexual bias, not a personal animosity, and therefore their claims were preempted by the PWCA. Id. at 834. Plaintiff notes that Hancuff involved an employee injuring another employee, whereas she is alleging that she was injured by Dingle, a third party and "patron," which is a term of art for

6

purposes of the Dram Shop Act, 47 P.S. § 1-102.

The Meadows contends that the personal animus exception to WPCA exclusivity cannot apply when Plaintiff does not allege that Dingle had any relationship with her outside the workplace or that there was any longstanding animosity between them. Indeed, it notes that, according to the allegations of the Complaint, she and Dingle just met hours before he attacked her.

However, the law is not as clear as the Meadows suggests. Several courts have observed that the law does not require "personal animus" but rather that the injuries were inflicted for "purely personal reasons." Krasevic v. Goodwill Indus. of Central Pa., 764 A.2d 561, 565 (Pa. Super. 2000) (citing Kohler v. McCrory Stores, 615 A.2d 27 (Pa. 1992)). Furthermore, the court noted that a sexual assault "cannot by stretch of the imagination be considered a work-related occurrence." Id. at 567 (citing Schweitzer v. Rockwell Int'l, Inc., 586 A.2d 383 (Pa. Super. 1990)). Therefore, the court held that an employee who was sexually assaulted and raped by a co-employee in the employer's bathroom could maintain her action for negligence in failing to ensure a safe workplace and it was not barred by section 481 of the PWCA. See also Huggins v. Coatesville Area Sch. Dist., 2008 WL 4072801, at *11-12 (E.D. Pa. Aug. 27, 2008) But see Durham Life Ins. Co. v. Evans, 166 F.3d 139, 160 & n.16 (3d Cir. 1999) (noting split in authority in Pennsylvania courts and not deciding the issue, but "suspecting" that IIED claims may be preempted because sexual harassment "is a well-recognized workplace problem, the kind of thing employers must be prepared to combat."); Frazier v. Exide Tech., 2012 WL 440398, at *4 (E.D. Pa. Feb. 13, 2012) (racial insults and harassment of plaintiff occurred at work and were primarily related to his job so IIED claim was barred).

The Complaint provides no basis for concluding that Dingle assaulted Plaintiff other than

7

for "purely personal reasons." The Court further observes that the Meadows has cited no cases addressing the issue of a sexual assault by an outsider, which is what occurred in this case. Therefore, the determination of whether Plaintiff's claims are preempted by the PWCA cannot be determined at this stage of the case.

The Dram Shop Act prohibits licensees from serving alcohol to visibly intoxicated customers, 47 P.S. § 4-493(1), and allows third persons injured by customers to sue licensees for having served the customers when they were visibly intoxicated, § 4-497. The Meadows argues that a violation of the Dram Shop Act "is deemed negligence per se." Johnson v. Harris, 615 A.2d 771, 775 (Pa. Super. 1992). Therefore, it contends that a Dram Shop Act claim against an employer would be preempted by the WPCA where employees are injured during the course and scope of their employment. In support of this argument, the Meadows cites Taylor v. Blue Knights Motorcycle Club of Canton, Inc., 2005 WL 469273 (Ohio App. Feb. 28, 2005), appeal not allowed, 106 Ohio St. 3d 1462 (Ohio July 13, 2005). However, in that case, the court held only that the plaintiff (a bouncer who was shot by an intoxicated patron as he was being escorted out of a bar), who was judicially estopped from asserting that he was not an employee after accepting a settlement and release of his workers' compensation claim in which he identified the club as his "employer," similarly would be estopped from asserting claims for negligence and dram shop liability. Id. at *6. The case contains no analysis of Dram Shop Act liability, preemption of workers' compensation claims or a personal animus exception.

For these reasons, the Motion to Dismiss Count III of Plaintiff's Complaint filed by Defendant (ECF No. 6) will be denied.

An appropriate order follows.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA CLEMONS,<br>　　　　Plaintiff,<br><br>　　vs<br><br>WASHINGTON TROTTING ASSOCIATION,<br>LLC, d/b/a THE MEADOWS & CASINO and the<br>ESTATE OF JOHN R. DINGLE, JR.,<br>　　　　Defendants. | Civil Action No. 18-866<br><br>Magistrate Judge Mitchell |

## ORDER

AND NOW, this 26th day of March, 2019, for the reasons explained above,

IT IS HEREBY ORDERED that the Motion to Dismiss Count III of Plaintiff's Complaint filed Defendant Washington Trotting Association, LLC, d/b/a The Meadows & Casino (ECF No. 6) is denied.

　　　　　　　　　　　　　　　　　　s/Robert C. Mitchell_____
　　　　　　　　　　　　　　　　　　ROBERT C. MITCHELL
　　　　　　　　　　　　　　　　　　United States Magistrate Judge